Nos. 22-16914, 22-16916, 22-16888, 22-16889, 22-16921, 22-16923

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

*In re Apple Inc. App Store Simulated Casino-Style Games Litigation*

*In re Google Play Store Simulated Casino-Style Games Litigation*

*In re Facebook Simulated Casino-Style Games Litigation*

On Appeal from the
United States District Court for the Northern District of California
Nos. 5:21-md-2985, 5:21-md-3001, 5:21-cv-2777
Hon. Edward J. Davila

Plaintiffs-Cross Appellants' Consolidated Reply Brief

Rafey S. Balabanian
Todd Logan
EDELSON PC
150 California St, 18th Floor
San Francisco, CA 94111
Tel: 415.212.9300
Fax: 415.373.9435

Jay Edelson
Alexander G. Tievsky
EDELSON PC
350 N LaSalle St, 14th Floor
Chicago, IL 60654
Tel: 312.589.6370
Fax: 312.589.6378
atievsky@edelson.com

*Counsel for Plaintiffs-Cross Appellants*

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................ ii

TABLE OF AUTHORITIES ........................................................................ iii

ARGUMENT IN REPLY ............................................................................... 1

    I.    The Court Should Decline the Platforms' Invitation to Create a Circuit Split. ........................................................ 1

    II.    The District Court Should Be Afforded Flexibility to Manage this Litigation as it Progresses. ......................... 5

        A.    The District Court Can Manage Discovery Without Dismissing Legal Theories. ....................... 5

        B.    The Platforms' Positions Demonstrate the Need for Precision in Resolving These Appeals. ............ 7

    III.    Conclusion ................................................................... 13

CERTIFICATE OF COMPLIANCE .................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*Alioto v. Town of Lisbon*,
 651 F.3d 715 (7th Cir. 2011) ........................................................ 7

*Barber v. Jefferson Cnty. Racing Ass'n, Inc.*,
 960 So. 2d 599 (Ala. 2006) ............................................................ 9

*BBL, Inc. v. City of Angola*,
 809 F.3d 317 (7th Cir. 2015) ......................................................... 2

*Bilek v. Fed. Ins. Co.*,
 8 F.4th 581 (7th Cir. 2021) ................................................... 1, 4, 6

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
 254 F.3d 882 (9th Cir. 2001) ......................................................... 6

*Dent v. NFL*,
 968 F.3d 1126 (9th Cir. 2020) ....................................................... 2

*F.A.C.E. Trading, Inc. v. Todd*,
 903 A.2d 348 (Md. 2006) ............................................................... 8

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
 521 F.3d 1157 (9th Cir. 2008) ....................................................... 3

*Foman v. Davis*,
 371 U.S. 178 (1962) ..................................................................... 12

*Gen. Steel Domestic Sales, LLC v. Chumley*,
 840 F.3d 1178 (10th Cir. 2016) ..................................................... 3

*In re Walsh*,
 15 F.4th 1005 (9th Cir. 2021) ....................................................... 7

*Kater v. Churchill Downs Inc.*,
　886 F.3d 784 (9th Cir. 2018) ............................................................2

*Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*,
　346 F.3d 1190 (9th Cir. 2003) ..........................................................1

*Oppenheimer Fund, Inc. v. Sanders*,
　437 U.S. 340 (1978) ..........................................................................8

*Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*,
　945 F.3d 1076 (9th Cir. 2019) ..........................................................2

*People v. Shira*,
　133 Cal. Rptr. 94 (Cal. Ct. App. 1976) .............................................9

*Sharkey v. O'Neal*,
　778 F.3d 767 (9th Cir. 2015) ..........................................................12

*Shirk v. U.S. ex rel. Dep't of Interior*,
　773 F.3d 999 (9th Cir. 2014) ..........................................................12

*Skinner v. Switzer*,
　562 U.S. 521 (2011) ..........................................................................7

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*,
　859 F.3d 720 (9th Cir. 2017) ............................................................3

*United States v. Kirilyuk*,
　29 F.4th 1128 (9th Cir. 2022) ...........................................................3

**Rules**

Fed. R. Civ. P. 8.......................................................................................2

Fed. R. Civ. P. 12................................................................................1, 2

Fed. R. Civ. P. 26.....................................................................................5

## ARGUMENT IN REPLY

In their cross-appeals, Plaintiffs make one narrow request: to modify the district court's order to reflect that the motions to dismiss were denied. The Platforms—eager to secure law of the case that forecloses all but one legal theory no matter how the facts of this case develop during discovery—all oppose this request. To avoid this minor and straightforward modification of the district court's order, the Platforms invite the Court to open a circuit split and then micromanage the district court in this litigation should it continue. The Court should apply its well-tested jurisprudence and decline to take such drastic action.

## I. The Court Should Decline the Platforms' Invitation to Create a Circuit Split.

As a general rule, this Court "recognize[s] that procedural rules are best applied uniformly, and [the Court] decline[s] to create a circuit split unless there is a compelling reason to do so." *Kelton Arms Condo. Owners Ass'n, Inc. v. Homestead Ins. Co.*, 346 F.3d 1190, 1192 (9th Cir. 2003). The Seventh Circuit has plainly held that dismissing legal theories or portions of complaints, as the district court did here, is not authorized by Rule 12. *See Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 587 (7th

1

Cir. 2021); *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). Meta and Google urge the Court to disagree with the Seventh Circuit and hold that district courts can dismiss legal theories. Meta Resp. Br. at 44–45; Google Resp. Br. at 29–31. However, they offer no compelling reason to do so, nor do they offer any persuasive rationale as to why the Seventh Circuit is incorrect.

Meta and Google's main argument is that the Court has *already* split with the Seventh Circuit on this question. They do cite at least one case—*Dent v. NFL*, 968 F.3d 1126 (9th Cir. 2020)—where this Court appeared to affirm dismissal of some legal theories while reversing the dismissal of another. However, neither that case nor any of the others they cite contain any discussion of why Rule 12(b)(6) would permit dismissal of legal theories or how such dismissals can be squared with Rule 8(d)(2). Indeed, in least one instance, the Court has done the opposite of what it did in *Dent*, reversing a district court's dismissal of a complaint in full even though it agreed with the district court's rejection of some of the legal theories that the plaintiff advanced. *Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788–89 & n.2 (9th Cir. 2018); *see also Pac. Coast Fed'n of Fishermen's Assocs. v. Glaser*, 945 F.3d 1076,

1086 (9th Cir. 2019) (rejecting even the notion that a plaintiff needs to plead *any* "specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case").[1]

Even if the Court has assumed without deciding that legal theories can be dismissed under Rule 12, that does not amount to addressing the issue. As this Court has "repeatedly stated, 'questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.'" *United States v. Kirilyuk*, 29 F.4th 1128, 1134 (9th Cir. 2022) (quoting *United States v. Ped*, 943 F.3d 427, 434 (9th Cir. 2019)) (alterations omitted). "Thus, cases are not precedential

---

[1] Google argues in a footnote that the Court has permitted dismissal of legal theories where qualified or absolute immunity is involved. *See* Google Resp. Br. at 28 n.8. However, absolute and qualified immunity are "immunities from suit, which differ from mere immunities from liability." *SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, 859 F.3d 720, 725 (9th Cir. 2017). "Section 230 of the CDA provides immunity only from liability, not suit." *Gen. Steel Domestic Sales, LLC v. Chumley*, 840 F.3d 1178, 1181 (10th Cir. 2016); *see also Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1162 (9th Cir. 2008) (en banc) ("Section 230 of the CDA immunizes providers of interactive computer services against *liability* arising from content created by third parties[.]") (emphasis added) (footnote omitted).

for propositions not considered [citation] or for matters that are simply assumed[.]" *Id.* (quotation marks omitted).

That principle is particularly important here, because there is no way to accept the Platforms' reasoning without disagreeing with *Bilek*. The plaintiff in *Bilek* offered three distinct legal theories of liability, each of which based entitlement to relief on entirely different conduct. *Compare Bilek*, 8 F.4th at 585 (explaining different conduct that supported each liability theory) *with* Meta Resp. Br. at 44–45 (incorrectly arguing that *Bilek* involved a "single course of conduct"). The Seventh Circuit considered only one of those theories and, having found it sufficient, determined that it was not appropriate to consider the other two. *See id.* at 587 ("[The plaintiff] states a plausible claim for relief under his actual authority theory of agency liability, so we start and end there."). The district court here read Plaintiffs to have alleged three distinct legal theories, but unlike the Seventh Circuit, it considered all three and "dismissed" the two that it deemed insufficient. That course of action cannot be reconciled with *Bilek*.

Instead of disagreeing with *Bilek*, the Court should simply modify the district court's order to reflect that the motion to dismiss was

4

denied, then affirm as modified. Not only does this straightforward solution avoid a circuit split, it also prevents the confusion that would be created by affirming dismissal of a legal theory on an interlocutory appeal. *See* Pls. Op. Br. at 65–70. The Platforms have provided no compelling reason to do otherwise.

## II. The District Court Should Be Afforded Flexibility to Manage this Litigation as it Progresses.

The Platforms also contend that Plaintiffs are somehow seeking to stop the district court from restricting discovery into particular theories of liability. In fact, the opposite is true. Plaintiffs are asking that the district court retain as much flexibility as possible to tailor discovery to the needs of this case, while Defendants have indicated that they will use an affirmance to argue that the district court is barred from departing from the order it already entered.

### A. The District Court Can Manage Discovery Without Dismissing Legal Theories.

Rule 26(b)(1) permits the district court to consider the "importance of the issues at stake in the action" and "whether the burden or expense of the proposed discovery outweighs its likely benefit" in determining whether to permit or deny any discovery. Accordingly, if the district

5

court is of the opinion that a particular theory of liability is not legally cognizable, then it does not need to have entered an order "dismissing" that theory to restrict discovery related only to that theory. At the same time, district courts can allow discovery into multiple legal theories, even without evaluating all of them at the pleading stage. *See Bilek*, 8 F.4th at 589 ("With a viable agency claim on its actual authority theory, [the plaintiff's] complaint moves forward at this pleading stage. In reaching this result, we need not and do not reach [the plaintiff's] apparent authority and ratification theories of agency liability. Of course, the parties may pursue discovery on these theories.").

Absent contrary direction from this Court, the district court will be free to restrict or permit discovery into the legal theories it dismissed, as it deems appropriate. *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 888–89 (9th Cir. 2001) ("All rulings of a trial court are subject to revision at any time before the entry of judgment. A trial court may *not,* however, reconsider a question decided by an appellate court.") (emphasis omitted in part). Given that "this court is particularly reluctant to interfere with a district court's day-to-day management of its cases," it would not be appropriate to

6

enter an order that forces the district court to manage discovery a certain way. *In re Walsh*, 15 F.4th 1005, 1010 (9th Cir. 2021).

Instead, the better course of action is to enter an order that confirms the district court was correct not to dismiss Plaintiffs' complaints without suggesting that the district court is prohibited from permitting any particular legal theory to move forward. The district court can then tailor discovery in a manner that is proportional to the needs of the case and that adapts as necessary to any future developments.

### B. The Platforms' Positions Demonstrate the Need for Precision in Resolving These Appeals.

Permitting the district court to maintain discretion over discovery is particularly important because the world is not compartmentalized neatly into facts that support one legal theory or another. That is one reason why, "under the Federal Rules of Civil Procedure, a complaint need not pin plaintiff's claim for relief to a precise legal theory." *See Skinner v. Switzer*, 562 U.S. 521, 530 (2011). While conducting discovery, a party often learns facts that permit it to advance a legal theory that was not previously an option. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (reiterating that "a complaint need not

plead legal theories, which can be learned during discovery");
*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978) (explaining that "discovery … is designed to help define and clarify the issues").

For example, a centerpiece of Apple's defense strategy is to argue that there are actually two separate transactions, and that the only transaction it is involved in has nothing to do with gambling. *See* Apple Resp. Br. at 12–16. Meta and Google have indicated that they will pursue similar strategies. *See* Google Op. Br. at 24 n.2, 30; Meta Resp. Br. at 31, 40; Defs. Supp Br. at 13 ("In this case, Plaintiffs' claims likewise could fail for myriad threshold reasons—including that … Defendants are not primarily or secondarily liable for any violation of [state gambling] laws by generally facilitating in-app purchases of virtual currency."). Courts nationwide have consistently rejected such artful attempts to recast gambling transactions for well over a century. *See, e.g.*, *F.A.C.E. Trading, Inc. v. Todd*, 903 A.2d 348, 359 (Md. 2006) ("To borrow language from our predecessors more than one hundred years ago, the product discount aspect of the operation 'is in fact a mere guise under which a gambling transaction may be conducted.'") (quoting

*Stewart v. Schall,* 4 A. 399, 401 (Md. 1886)); *People v. Shira*, 133 Cal. Rptr. 94, 104–05 (Cal. Ct. App. 1976) ("In determining whether the contract is in the nature of a lottery, we look, not to the name, but the game. Courts will not tolerate subterfuge, however ingenious may be the scheme devised to evade the law.") (quoting *Nat'l Thrift Ass'n v. Crews*, 241 P. 72, 73 (Ore. 1925)). More recently, at least one state's supreme court has rejected the premise that by using computers and splitting up the transaction, gambling can be transformed into something lawful. *See Barber v. Jefferson Cnty. Racing Ass'n, Inc.*, 960 So. 2d 599, 614 (Ala. 2006) ("The flaw in [the defendant's] approach is that the elements [of gambling] are not 'missing' from the mechanics of the scheme. They are simply *dispersed* throughout the various units and processes of the integrated network.").

The greater the degree of the Platforms' involvement in the social casino apps' businesses, the more likely it is that the Platforms' brokering of gambling transactions is no more than a subterfuge designed to allow the Platforms to reap enormous profits while pretending that they are involved in legitimate commerce. Accordingly, it will be appropriate for Plaintiffs to take discovery regarding the

9

nature and degree of the Platforms' participation in the operation and design of the unlawful social casinos, even beyond the mere fact of the transactions. That discovery would not stray beyond the bounds of what the district court deemed cognizable: evidence supporting "relief … grounded in the Platforms' own bad acts, not in the content of the social casino apps that the Platforms display on their websites." Apple-ER-35. At the same time, it may turn up evidence that the Platforms' "contribution of data and advertisements helped create and develop the application itself," which would materially change the district court's analysis as to a theory of liability it previously rejected. *See* Apple-ER-36.

Google dismisses this possibility as "baseless speculation," *see* Google Resp. Br. at 32–33, but that does not make a great deal of sense. Plaintiffs are not speculating about the discovery necessary to refute the defenses that Defendants have already promised to raise. Similarly, they are not speculating that such discovery overlaps with the theories that the district court has taken off the table for now. The question that remains is: what will happen if the overlapping discovery gives Plaintiffs new, relevant insight into the connection between the

Platforms and the social casino apps that changes their theories of liability?

If this Court affirms, the Platforms have made clear that they will argue that Plaintiffs are precluded from asserting those theories *no matter what happens. See* Apple Resp. Br. at 29 ("If this Court affirms, the case will move forward on the basis of Plaintiffs' 'brokering' theory alone."); Meta Resp. Br. at 47 ("[I]f the Court reaches the opposite result, this case will proceed only to the extent Plaintiffs' causes of action rest on a payment-processing theory."); Google Resp. Br. at 32 (arguing that Plaintiffs could not amend their complaint to add additional facts that might support liability because "any theory expressly held to be barred by Section 230 would necessarily be futile"). In other words, even if Plaintiffs learn information during discovery that fundamentally changes the nature of the highly fact-based inquiry required to evaluate the applicability of Section 230, the Platforms will argue that the district court has no authority to revisit its previous conclusions or even to permit amendment of the complaint.

In effect, the Platforms are arguing that the Court's affirmance would be equivalent to dismissal of those theories with prejudice and

11

without leave to amend. But the Court has repeatedly explained that dismissal of a complaint without leave to amend is permissible only if the district court determines "that the pleading *could not possibly* be cured by the allegation of other facts[.]" *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (quoting *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc)). The district court has made no such finding here, and none of the Platforms have argued that it was an abuse of discretion not to do so. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) ("[T]he grant or denial of an opportunity to amend is within the discretion of the District Court."). There is no reason for this Court to decide that question in the first instance. *Cf. Shirk v. U.S. ex rel. Dep't of Interior*, 773 F.3d 999, 1007 (9th Cir. 2014) ("As a federal court of appeals, we must always be mindful that we are a court of review, not first view.") (quotation marks omitted).

In sum, if this Court agrees that Plaintiffs' allegations regarding the Platforms' brokering of unlawful gambling transactions do not run afoul of Section 230, then there is no basis to dismiss the complaints as a result of Section 230. To avoid confusion about what constitutes the law of the case, the Court should therefore modify the district court's

order to reflect its actual effect—that the motions are denied and the case is not dismissed—and affirm as modified. This course of action minimizes the disruption of an interlocutory appeal and ensures that the district court retains the flexibility to manage this complex case as it develops.

## III. Conclusion

If the Court determines that it has subject-matter jurisdiction over these appeals, it should modify the district court's order to indicate that the motions to dismiss are denied and affirm the order as modified.

Dated March 8, 2024　　　　　　　　Respectfully Submitted,

By: /s/ Alexander G. Tievsky
One of Plaintiffs-Cross Appellants' attorneys

Rafey S. Balabanian　　　　　　　　Jay Edelson
Todd Logan　　　　　　　　　　　　Alexander G. Tievsky
EDELSON PC　　　　　　　　　　　EDELSON PC
150 California St, 18th Floor　　　　350 N LaSalle St, 14th Floor
San Francisco, CA 94111　　　　　　Chicago, IL 60654
Tel: 415.212.9300　　　　　　　　　Tel: 312.589.6370
Fax: 415.373.9435　　　　　　　　　Fax: 312.589.6378
　　　　　　　　　　　　　　　　　atievsky@edelson.com

*Counsel for Plaintiffs-Cross Appellants*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s):** 22-16914, 22-16916, 22-16888, 22-16889, 22-16921, 22-16923

I am the attorney or self-represented party.

**This brief contains** 2,656 **words,** including 0 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

○ complies with the word limit of Cir. R. 32-1.

● is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
- ☐ it is a joint brief submitted by separately represented parties.
- ☐ a party or parties are filing a single brief in response to multiple briefs.
- ☐ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated _____.

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Alexander G. Tievsky **Date** 03/08/2024
*(use "s/[typed name]" to sign electronically-filed documents)*

Feedback or questions about this form? Email us at forms@ca9.uscourts.gov